Sanders and Sons, Inc., et al. [1] v. Commissioner. Sanders & Sons, Inc. v. Commissioner
Docket Nos. 2248-66 - 2252-66.
United States Tax Court
T.C. Memo 1967-146; 1967 Tax Ct. Memo LEXIS 112; 26 T.C.M. (CCH) 671; T.C.M. (RIA) 67146; July 7, 1967
Gene W. Reardon and Gene F. Reardon, 2150 First Nat'l Bank *113 Bldg., Denver, Colo., for the petitioners. John W. Alexander, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: Petitioner
Year
Deficiency
Sanders and Sons, Inc.
1962
$36,982.48
1963
21,795.72
1964
18,245.68
Nathan M. Sanders, et ux.
1962
892.85
1963
324.42
1964
175.30
Lawrence Sanders, et ux.
1964
96.76
Robert Sanders, et ux.
1964
324.17
Paul L. Sanders
1962
4,472.31
1963
5,609.90
1964
231.32
Sanders and Sons, Inc. alleges that the Commissioner erred in disallowing deductions for (1) "bonuses" as "officers compensation" for each year, (2) weekly payments to Paul of $3,900 in 1962 and $1,950 for 1963, (3) medical expenses "paid for its officer-employee, Paul L. Sanders" of $16,594.52 for 1962 and $13,837.54 for 1963, and (4) medical expenses of $8,392.29 "for its officeremployees for 1964." Nathan and Irene allege that the Commissioner erred (1) in disallowing them a medical deduction of $2,335 for 1962 "representing doctor and medical expenses paid for his dependent son" and (2) "in determining that the medical expenses *114 for petitioner of $810.80 for 1963 and $1,055.54 for 1964 paid by Sanders and Sons, Inc. are taxable to petitioners as dividends." Lawrence alleges that the Commissioner "erred in determining that the medical expense for petitioner of $503.90 for 1964 paid by Sanders and Sons, Inc. is taxable as dividends." Robert alleges that the Commissioner (1) "erred in determining the medical expense for petitioner of $1,641.39 for 1964 paid by Sanders and Sons, Inc. is taxable as dividends," and (2) "erred in disallowing petitioner a dependency exemption of $600.00 for his minor dependent son" for 1964. Paul alleges that the Commissioner erred (1) "in determining that the medical expenses of $16,594.52 for 1962; $12,954.92 for 1963; and $5,191.46 for 1964 paid by Sanders and Sons, Inc. are taxable to the petitioner as dividends."; (2) "in disallowing petitioner a sick pay exclusion of $2,600 for the year 1963" and $5,200 for 1962. Findings of Fact Sanders and Sons, Inc. is a Colorado corporation with its place of business in Denver, Colorado. It used an accrual method of accounting in keeping its books and records and filing its Federal income tax returns. The corporation is engaged *115 in the retail carpet business. All of the individual petitioners in these proceedings resided in Denver. They and Sanders and Sons, Inc., filed their Federal income tax returns for the taxable years with the district director of internal revenue, Denver, Colorado and reported their incomes on the calendar year basis. Nathan M. Sanders carried on a retail carpet business for some years in Denver as a sole proprietorship. Sanders and Sons, Inc. was incorporated in 1957 with 10,000 shares of $1 par value common stock. Its stockholders for the years 1957 through 1960 were Nathan 5,000 shares, Irene 4,999 shares, and Lawrence 1 share. In the years 1961 through 1964 the stockholders were as follows: Name
1961
1962
1963
1964
Nathan M. Sanders
5,000
4,100
3,650
3,650
Irene Sanders
3,199
2,299
1,849
949
Lawrence Sanders
601
1,201
1,501
1,801
Robert S. Sanders
600
1,200
1,500
1,800
Paul L. Sanders
600
1,200
1,500
1,800
Robert, Lawrence and Paul L. Sanders are sons of Nathan M. and Irene Sanders. Robert was born in 1929, Lawrence in 1934, and Paul in 1940. Robert began working in his father's business in 1957. Lawrence started working *116 in the business after finishing high school and college. Sanders and Sons, Inc. has never declared and paid a dividend to its stockholders. Paul L. Sanders graduated 666th in a class of 775 at East Side High School of Denver in June 1958 and then began to work full time for Sanders and Sons, Inc. He entered the United States Army in 1959, served for six or seven months and returned to work at Sanders and Sons, Inc. in the latter part of 1959. He received a medical discharge from the Army in 1961 which relieved him from further army service. Paul received psychiatric treatment on a total of 25 days beginning on October 28, 1961 and extending through November and December of 1961. He was a patient in a Denver hospital from January 2 to January 12, 1962 and received psychiatric treatment while there and on 13 later days in January 1962. All of the above treatments were given by a doctor whose practice is limited to psychiatry. Paul was a full time resident patient in Menninger Hospital in Topeka, Kansas from January 27, 1962 until he left on July 1, 1963. He received psychiatric treatment from staff psychiatrists while in the hospital. Paul returned to Denver on July 2, 1963 and *117 from that date through December 31, 1963 had 114 appointments with a psychiatrist in Denver and during the twelve months of 1964 he had 188 appointments with the same psychiatrist in Denver. He also had one treatment on August 3, 1964 from the psychiatrist who had treated him before he went to the Menninger Hospital. Paul did not wok for some time after he returned from Menningers to Denver. His first employment thereafter was for about four weeks full time in a Denver clothing store for which he was paid $217.14. He then began to work for Sanders and Sons, Inc. in September 1963. In the years 1959 through 1964, Nathan, Robert, Lawrence, and Paul Sanders received weekly salary checks from Sanders and Sons, Inc. in the following amounts: *
Year
Nathan
Robert
Lawrence
Paul
1959 $200 X 52 $119 X 52
$ 60 X 52
$ 12.95 X 40
32 X 12
Total
$10,400
$6,188
$3,120 $902
1960 $200 X 52 $119 X 16
$ 60 X 6
$ 32 X 11
150 X 36
70 X 4
50 X 41
80 X 41
Total
$10,400
$7,304
$3,960
$2,402
1961 $200 X 52 $150 X 19
$ 80 X 20
$ 50 X 48
175 X 33
100 X 12
75 X 4
155 X 20
Total
$10,400
$8,625
$5,900
$2,700
1962 $200 X 52 $175 X 24 $155 X 24
$ 75 X 52
200 X 28
175 X 28
Total
$10,400
$9,800
$8,600
$3,900
1963 $200 X 52 $200 X 52 $175 X 42
$ 75 X 40
200 X 10
100 X 8
Total
$10,400
$10,400
$9,350
$3,800
1964 $200 X 53 $200 X 53 $200 X 53 $100 X 9
125 X 40
150 X 4
Total
$10,600
$10,600
$10,600
$6,500
*118 Bonuses were accrued to Nathan, Robert, Lawrence and Paul Sanders by Sanders and Sons, Inc. on December 31 of the years 1959 through 1964 in the following amounts: Year
Nathan
Robert
Lawrence
Paul
1959
$ 3,000
$ 3,000
$ 1,500
1960
5,000
5,000
5,000
1961
$10,000
10,000
10,000
5,000
1962
15,000
15,000
15,000
1963
5,000
5,000
5,000
5,000
15,000 *
1964
7,500
7,500
7,500
7,500
Checks for the above bonuses less certain withheld taxes, were issued by Sanders and Sons, Inc. to Nathan, Robert, Lawrence and Paul Sanders in the amounts and on the dates listed hereunder: Date
Nathan
Robert
Lawrence
Paul
3/14/1960
$ 2,274.00
$ 2,274.00
$ 1,137.00
3/14/1961
3,874.00
3,820.00
3,811.00
3/15/1962
$ 9,916.00
8,848.50
8,842.50
4,348.50
3/15/1963
14,906.75
14,906.75
14,895.85
14,855.70
3/15/1964
5,000.00
5,000.00
5,000.00
5,000.00
3/15/1965
7,399.55
7,399.50
7,399.50
7,380.40
*119 Upon receiving the aforesaid bonus checks Nathan, Robert, Lawrence and Paul deposited the checks to the bank account of Sanders and Sons, Inc. and at all times during the years 1962 through 1964, Sanders and Sons, Inc. owed Robert, Lawrence and Paul substantial sums with the balances owed as of the end of the years 1961 through 1964, being in the amounts shown hereunder: Robert
Lawrence
Paul
12/31/61
$ 8,692.81
$ 6,175.55
$ 6,026.14
12/31/62
4,871.73
10,343.19
8,363.40
12/31/63
18,342.00
20,434.09
20,111.16
12/31/64
13,769.53
15,908.86
18,662.48 No interest was paid on the above amounts. Nathan, Robert and Lawrence worked full time for the corporation and shared the duties and responsibilities of the business The records of Sanders and Sons, Inc. include a book of minutes relating to directors' meetings. Therein is a document dated December 29, 1960 with the title "Health and Accident Plan for the benefit of Certain Officers of Sanders and Sons, Inc.". The remainder of that document is as follows: I. 1. Effective January 1, 1961, Sanders & Sons, Inc., (hereinafter referred to as the "Company") will reimburse at least quarterly any *120 officer of the Company, who is employed by the Company on a full-time basis, for all expenses incurred by such officer for the medical care (as defined in Section 213(e) of the Internal Revenue Code of 1954, or as hereafter amended) of such officer, his spouse and his dependents (as defined in Section 152 of the Internal Revenue Code of 1954, or as hereafter amended). An officer shall be considered as employed on a full-time basis for the purposes of this Plan if he customarily works at least seven months in each year and twenty hours in each week. Expenses for medical care as so defined in Section 213(e), include all amounts paid for hospital bills, doctor and dental bills, drugs, and premiums on accident or health insurance, including hospitalization, surgical, and medical insurance. Dependents as so defined in Section 152, includes any member of such officer's family over one-half of whose support is furnished by such officer. 2. The Company may, in its discretion, pay directly any or all of the above defined expenses in lieu of making reimbursement therefor. In such event, the Company shall be relieved of all further responsibility *121 with respect to that particular medical expense. 3. The reimbursement to, or the payment on behalf of, any one officer, including his spouse and his dependents, shall be without limitation. 4. Any officer applying for reimbursement under this Plan shall submit to the Company, at least quarterly, all hospitalization, doctor, dental or other medical bills, including premium notices for accident or health insurance, for verification by the Company prior to payment. A failure to comply herewith may, at the discretion of the Company, terminate such officer's right to said reimbursement. II. 1. Effective January 1, 1961, Sanders & Sons, Inc., will continue the wages of any officer, who is employed by the Company on a full-time basis, as defined in Article I above, during any period in which such officer is absent from work as the result of personal injury or sickness. 2. For purposes of this Plan, all officers of the Company shall be considered as being paid on a seven day work week basis, since all officers of this Company are available for call to work on Saturdays, Sundays and Holidays, as well as the remaining five weekdays. III. 1. Reimbursement or payment provided under *122 this Plan shall be made by the Company only in the event and to the extent that such reimbursement or payment is not provided for under any insurance policy or policies, whether owned by the Company or the officers, or under any other health and accident or wage continuation plan. In the event that there is such a policy or plan in effect, providing for reimbursement or payment in the coverage under such policy or plan the Company shall be relieved of any and all liability hereunder. 2. It is the intention of the Company that benefits payable under thisplan shall be eligible for exclusion from the gross income of the officers covered by this Plan, as provided by Section 105 of the Internal Revenue Code of 1954, as hereafter amended. 3. Any person hereafter becoming an officer of this Company, employed on a full-time basis, shall be eligible for the benefits provided under this Plan. 4. A copy of this Plan shall be given to all present and future officers of this Company, who are employed on a fulltime basis. 5. This Plan shall be subject to termination at any time hereafter by affirmative vote of the Board of Directors of the Company; provided, however, *123 that such termination shall not affect any right to claim reimbursement for medical expenses under the provisions of Article I above, arising prior to said termination. Nathan and Irene on their 1961 and 1962 returns claimed medical deductions including $240 in 1961 and $2,335 in 1962 paid for psychiatric care for Paul consisting of $900 to his Denver psychiatrist and $1,675 to the Menninger Hospital. Nathan paid the above amounts. Thereafter in the latter part of 1962 and until late in 1963 the checks in payment of these medical expenses were issued against the bank account of Sanders and Sons, Inc., but the books and records of Sanders and Sons, Inc., did not show the purpose of those checks. The bookkeeper, Marie Clare, had not been told how the checks issued in payment of those expenses were to be charged and she placed a question mark over the explanation area in the books and records of Sanders and Sons, Inc. Finally in October of 1963 she was informed that checks issued in payment of Paul's medical expenses were to be shown as medical expenses owed by Sanders and Sons, Inc. under the Health, Accident and Wage Continuation Plan. Sanders and Sons, Inc. did not pay any medical *124 expenses for Nathan, Robert, Lawrence, or Paul for the year 1961. Paul did not claim an exclusion of medical payments on his tax return filed for the year 1962. Sanders and Sons, Inc. paid no medical expenses for Robert or Lawrence in any of the years 1961, 1962 and 1963. Sanders and Sons, Inc. paid medical expenses for Nathan, Robert, Lawrence and Paul in the taxable years 1962 through 1964 as follows: *
Nathan
Robert
Lawrence
Paul
1962
$16,594.52
1963
$ 810.80
12,954.92
1964
1,055.54
$1,641.39
$450.04
5,191.46 Respondent disallowed those payments as deductions for the petitioner-corporation and included such sums as dividend income to the individuals for whom the payments were made. Salaries of officers as authorized by the minutes of directors meetings were as follows: Nathan
Robert
Lawrence
Paul
Total
6-4-57 $500 a wk. $119 a wk. $50 a wk.
12-27-58 for '59
$10,400
$ 5,831.h$ 3,120
$19,351
12-28-59 for '60
10,400
10,304
6,960
27,664
12-29-60 for '61
10,400
13,625
10,900
$ 7,700
42,625
12-29-61 for '62
20,400
19,800
18,660
8,900
67,760
12-28-62 for '63
25,400
25,400
24,350
19,100
94,250
12-27-63 for '64
15,600
15,600
15,600
11,350
58,150
*125 The above amounts were in some instances more and in some less than the amounts reported on the returns and the amounts for which checks were issued to the named employees. Sanders and Sons, Inc. filed its returns through 1960 as a small business corporation and the stockholders reported their shares of the income shown on those returns. It filed regular corporation returns for 1961 through 1964. The following table shows its gross income from sales and net income as reported for each year and officers' salaries paid or accured for each year: Gross
Officers'
Net
Year
Income
Salaries
Income
1957
$ 56,782.26
$18,341.46
1958
68,809.23
17,580.49
1959
86,171.36
27,209.70
1960
104,694.29
$31,560
27,372.66
1961
151,950.90
42,625
17,465.32
1962
197,136.00
67,700
24,629.00
1963
190,365.67
93,950
17,650.68
1964
190,397.21
58,300
22,787.83
Robert and his first wife, Geraldine, were divorced in 1957. The wife was awarded custody of the only child, a baby boy, but Robert was given the right to have the child during the three summer months and was required to pay $22.50 per week for his support during the other nine months. He *126 was also required to pay medical expenses of the child. Robert had the child, then 9 years old, during three months in 1964. The record does not show the total cost of support for the child in 1964 or that Robert paid more than half of it. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: Section 162(a)(1) allows as a deduction to the employer: all the ordinary and necessary expenses * * * incurred during the taxable year in carrying on any * * * business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; The Commissioner in determining the deficiencies disallowed the deductions claimed by Sanders and Sons, Inc. in each of the years 1962, 1963, and 1964 for portions of officers' salaries called "bonuses". The salaries to the father and his two older sons paid weekly were allowed as deductions. The corporation accrued additional amounts as salaries to the father and the three sons $45,000 on December 31, 1962, $15,000 in March 1963, $20,000 in December 31, 1963 and $30,000 on December 31, 1964. The *127 December 31st accruals were to be paid on the following March 15th and checks as shown in the findings of fact were issued to the payees on those dates, including the $15,000 accrued in March 1963. However, as each check was received by the payee he indorsed it to and returned it to Sanders and Sons, Inc.
The record does not show that the amounts thus accrued and deducted by the corporation were ordinary and necessary expenses of the corporation or that they were reasonable allowances for salaries or other compensation for personal services actually rendered by the payees. So far as the record shows the whole procedure in each year was a prearranged farce under which no funds of the corporation actually left the corporation or were intended to leave it. In addition the record fails to show that the amounts involved would have been reasonable compensation for services actually rendered if each employee had kept the amount of each check which he received instead of returning each check to the corporation. The claim of the corporation in regard to the bonuses in the case of Paul is particularly lacking in merit. Those bonuses accrued in 1963 and 1964 for his services for 1963, 1964, *128 and 1965 amounted to $27,500 in addition to weekly payments in the total amount of $18,000. Paul had just passed his twenty-first birthday and was receiving psychiatric treatment during the latter part of 1961, he was in a Denver hospital on January 2 through January 12, 1962, receiving psychiatric treatment, he continued to receive such treatment in Denver for 13 more days that month, he entered Menninger Hospital on Janu1ry 27, 1962 and left on July 1, 1963 having received psychiatric treatment while there, he returned to Denver on July 2, 1963, and had 115 psychiatric treatments during the remaining 182 days of 1963. He had 188 similar treatments during 1964. He returned to work for Sanders and Sons, Inc. in September 1963 and continued working there as much as he could during the remainder of 1963 and all of 1964. At some undisclosed time after 1963 he was made head of the drapery department of Sanders and Sons, Inc. The testimony is that he had talent in the combination of colors but it does not show any sound reason for voting him the bonuses here involved during the years 1963 and 1964. The next issue in the case of the corporation is whether the Commissioner erred in disallowing *129 deductions of $3,900 for 1962 and $1,950 for 1963 representing weekly due to illness. Paul was paid $12.95 per week for 40 weeks of 1959 and $32 per week for the last 12 weeks and the first 11 weeks of 1960, even though he was away for 6 or 7 months in 1959. His weekly pay was $50 for the last 41 weeks of 1960 and the first 48 weeks of 1961. The Commissioner contends that the increase in Paul's wages to $75 per week for the last 4 weeks of 1961 which carried over for all of 1962 and the first 40 weeks of 1963 was beyond the reasonable needs of the business in view of the fact that Paul began having psychiatric treatments on October 28, 1961 and entered a Denver hospital within a month after the increase. There is no evidence to support this increase in wages after it was known that Paul was having serious mental troubles. The deductions should be allowed in the amounts of $2,600 for 1962 and $1,300 for 1963, representing a "continuation" of Paul's wages at $50 per week. Those amounts are exempt from tax to Paul under section 105(d). A related question is whether the Commissioner erred in disallowing deductions to the corporation for medical expenses paid for Paul of $16,594.52 for *130 1962, $12,954.92 for 1963 and $5,191.46 for 1964; for Nathan $810.80 for 1963 and $1,055.54 for 1964; and in 1964 $1,641.39 for Robert and $450.04 for Lawrence. If any of these amounts are deductible by the corporation it would have to be under section 162(a)(1) as "a reasonable allowance for salaries or other compensation for personal services actually rendered" representing an ordinary and necessary expense incurred during the taxable year in carrying on its business. The record leaves some doubt as to whether this plan was actually adopted at the end of 1960 or at some later date when Paul's illness was obviously known to exist. The plan placed no limit upon the amount which the corporation might be required to pay. None of the four beneficiaries made any claim under the plan in 1961 or 1962, although Nathan in his 1961 and 1962 returns claimed medical deductions including substantial amounts paid for psychiatric care for Paul. Paul's medical expenses beginning in the latter part of 1962 and for 1963 and 1964 were paid by the corporation but its bookkeeper was not told until October 1963 that those checks were to be charged to the Health and Accident Plan. Robert and Lawrence *131 made no claim and received nothing from the corporation under the plan until 1964. The amounts which Nathan received under the plan in 1963 and 1964 and which Robert and Lawrence received in 1964, plus their weekly drawing accounts were not in excess of reasonable allowances "for salaries or other compensation for personal services actually rendered" by them during those years and are deductible by the corporation under section 162(a)(1). However, the amounts paid for Paul's benefit under the plan in 1962, 1963, and 1964 were in each year in excess of a reasonable allowance "for salaries or other compensation for personal services actually rendered" by him to the corporation up to the times of those payments and those amounts are not deductible by the corporation as ordinary and necessary expenses incurred during those years in carrying on its business. Paul needed the money and it was paid by the corporation for his benefit but the payments represent dividends to a stockholder for Federal income tax purposes. Nathan and Irene claim the right to deduct $2,335 for 1962 "representing doctor and medical expenses paid for his dependent son" Paul. The latter was 22 years of age in 1922, *132 had been paid a salary of $2,402 in 1960, $2,700 in 1961 and $3,900 in 1962 of which a part has been held herein to have been dividends. The corporation paid $16,594.52 of Paul's 1962 medical expenses. The evidence does not support the petitioners' contention that Paul was their dependent in 1962. Robert claims a dependency exemption for 1964 based upon his share of his son's support. Robert was required to pay $22.50 per week for the son's support while the son was not living with Robert. Robert also testified, "I believe I had some heavy medical expenses for him that year, $80.00 a month, as I recall that I paid also." There is no evidence of the total cost of the son's support in 1964. The evidence does not show that Robert supplied over half of the support of this son during 1964 and this point must be decided against Robert. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Nathan M. Sanders and Irene Sanders, Docket No. 2249-66; Lawrence Sanders and Roberta P. Sanders, Docket No. 2250-66; Robert Sanders and Patricia Sanders, Docket No. 2251-66; Paul L. Sanders, Docket No. 2252-66.↩
*. As stipulated.↩
*. Paul also received an extra bonus of $15,000 which was accrued and paid in March of 1963 since a bonus was not accrued to his account by Sanders and Sons, Inc. as of December 31, 1962.↩
*. Stipulated.↩